UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| NO BALONEY MARKETING, LLC, PETER G. TAMULONIS, PETER J. TAMULONIS, and NATHAN A. TAMULONIS, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | 1:09-cv-0200-SEB-TAB |
| vs. | ) ) | |
| WILLIAM F. RYAN, FRANK BROWN, LAMAR BERRY, DEAN YOUNG, BOB HARTFORD and ROBERT MYERS, | ) ) ) ) | |
| Defendants. | ) | |

**ORDER ADDRESSING PENDING MOTIONS**

This cause is before the Court on the Defendant Dean Young's Motion to Dismiss for lack of Personal Jurisdiction [Docket No. 19], filed on March 27, 2009; Defendant Bob Hartford's Motion to Dismiss for lack of Personal Jurisdiction [Docket No. 34], filed on April 22, 2009; Defendant Robert Myers's Rule 12(b)(6) Motion to Dismiss [Docket No. 37], filed on April 22, 2009; Defendant Robert Myers's Motion for Change of Venue [Docket No. 39], filed on April 22, 2009; Defendant William F. Ryan's Motion to Dismiss for Lack of Personal Jurisdiction [Docket No. 42], filed on April 24, 2009; Defendant William F. Ryan's Motion to Dismiss For Failure to Join Party Under Rule 19 [Docket No. 44], filed on April 24, 2009; Defendant Lamar Berry's Motion to Dismiss for Lack of Personal Jurisdiction [Docket No. 47], filed on April 29, 2009; and the Motion to

file Surreply Brief [Docket No. 81] filed by Defendants William F. Ryan and Dean Young on July 27, 2009.

For the reasons detailed in this entry, Defendant Young's Motion to Dismiss is GRANTED; Defendant Hartford's Motion to Dismiss is GRANTED; Defendant Myers's Motion to Dismiss pursuant to 12(b)(6) is GRANTED in part and DENIED in part; Defendant Myers's Motion for Change of Venue is DENIED; Defendant Ryan's Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED; Defendant Ryan's Motion to Dismiss Pursuant for Failure to Join Party is DENIED; Defendant Berry's Motion to Dismiss is GRANTED; and the Motion to File Surreply is GRANTED.

## ***Factual Background***

### *I.     The Parties*

Plaintiffs include Peter G. Tamulonis, Peter J. ("P.J.") Tamulonis, and Nathan Tamulonis, residents of Indiana, and No Baloney Marketing, LLC, an Indiana limited liability company (collectively "Plaintiffs"). Defendants include William F. Ryan ("Ryan"), Frank Brown ("Brown"), Lamar Berry ("Berry"), Dean Young ("Young"), Bob Hartford ("Hartford"), and Robert Myers ("Myers") (collectively "Defendants").

Dagwood's Sandwich Shoppe, LLC ("DSS"), which is not named as a Defendant, is a limited liability company with its corporate offices and training center located in Clearwater, Florida. Compl. ¶ 1. Defendants Dean Young and Lamar Berry were the co-founders of DSS. Id. at ¶¶ 2, 3. Along with Defendant Robert Myers, they were

2

members of the DSS Board of Managers and part owners of the business during the relevant period.  Young and Berry also were Co-Vice Chairmen of the DSS Board of Managers.  Id. at ¶¶ 3-5.

## I.    *Dagwood's Sandwich Shoppe*

During the relevant period, DSS promoted itself as having a potentially profitable system for franchising restaurants, including an established step-by-step system for creating each individual franchise.  Id. at ¶ 6.  DSS promoted a two-tier franchising system in which individual Dagwood's Sandwich Shoppe franchise opportunities are marketed primarily through "Market Partners" assigned to exclusive Direct Marketing Areas by DSS.  DSS was to provide training, marketing and support to these Market Partners.  Id.  at  ¶ 7.

From the outset, DSS represented to potential Market Partners that "DSS is qualified or licensed to do business as a foreign limited liability company and is in good standing in every jurisdiction where the nature of the business conducted by it or the properties owned or leased by it requires qualification."  Id. at ¶ 8.  DSS's promotional efforts included registering as a franchisor with the State of Indiana.  Id. at ¶¶ 9, 10.  According to the Complaint, Defendants placed telephone calls, directed mail, and transmitted email to persons in Indiana in the course of promoting and managing their restaurant franchise concept.  Id. at ¶ 12.

3

## II.      *Plaintiffs' Involvement with DSS and Defendants*

In the summer of 2007, after learning of the franchise opportunities presented by Dagwood's Sandwich Shoppe, Plaintiffs Peter and P.J. Tamulonis initiated contact with and obtained advertising and promotional materials from DSS, at which point Defendants invited them to meetings at DSS corporate offices in Florida.  Compl. ¶ 17.  On August 7, 2007, Plaintiffs traveled to Florida to attend these meetings, where they spoke with DSS representatives Bob Hartford, Frank Brown, and Lamar Berry.  Id. at ¶ 18.  Hartford was a part owner of DSS and was involved in the solicitation of Market Partners.  Id. at ¶ 19.  Brown was an owner, employee, COO and Senior Vice President of Development for DSS.  Id. at ¶ 20.

At the August 2007 meetings, Plaintiffs expressed both their interest in getting involved with DSS and their concern about potential brand confusion with another company, which was operating a restaurant in Bloomington, Indiana under the name "Dagwood's Deli & Sub Shoppe" ("Bloomington Dagwood's").  Id. at ¶¶ 22, 23.  Plaintiffs communicated this concern to Hartford, who said that he would inquire into the brand confusion issue.

In a subsequent conversation, Hartford and Brown stated that DSS corporate was fully aware of the Bloomington Dagwood's, that they had contacted representatives of that entity, and that they believed there was no reason to expect a problem moving forward.  Id. at ¶ 25.  According to the Complaint, as of the date of this conversation, Defendants had, in fact, only communicated with representatives of the Bloomington

Dagwood's twice: First, on January 15, DSS Secretary and General Counsel William Ryan sent a letter to the Bloomington Dagwood's accusing the latter of intellectual property infringement and demanding certain information.  Second, on January 20, attorneys from the Bloomington Dagwood's responded, denying infringement and stating that they had no objection to DSS operating restaurants, so long as none were operated in Indiana.  Id. at ¶27.  Plaintiffs allege that Defendants never informed them of a September 21, 2007 letter from Bloomington Dagwood's to Ryan explicitly objecting to DSS's plans to open franchises in Indiana and advising that a new restaurant of the Bloomington brand would soon be opened in Indianapolis.  Id. at ¶ 29.

In addition to the concern about the Bloomington Dagwood's, at the initial Clearwater, Florida, meeting, Plaintiffs raised specific questions about the financial condition of DSS.  In response, Hartford, Brown, and Berry repeatedly assured Plaintiffs that the enterprise was financially sound.  Id. at ¶ 33.  According to the Complaint, at the time of these representations DSS was insolvent.  Id. at ¶ 34.  Plaintiffs allege that, had they been informed fully about the problems associated with the Bloomington Dagwood's and DSS's financing, they never would have proceeded toward entering into an agreement with Defendants.

Upon their return to Indianapolis after the August 2007 meeting in Florida, Plaintiffs initiated a follow-up communication with Hartford, in which Plaintiffs informed Hartford that they were interested in moving forward.  Id. at ¶ 38.  Brown, who entered the negotiation discussions after Plaintiffs made an initial proposal, suggested a fee

payment schedule beginning with $70,000, followed by payment of $35,000 on December 31, 2007, and the balance on the earlier of April 30, 2008 or the date on which Plaintiffs' first store opened.  Pursuant to these terms, Plaintiffs agreed to be the Market Partner for the Indianapolis area and formed No Baloney Marketing to be the formal central Indiana Market Partner, lessee, and operational entity. Id. at ¶¶ 39, 44.

Berry sent a letter to Plaintiffs on September 24, 2007, welcoming them as Indianapolis (Central Indiana) Market Partner for DSS.  Plaintiffs leased office space, obtained a website, and obtained business cards in furtherance of the venture.  Id. at ¶¶ 45-46.  Plaintiffs also began scouting possible store locations, making initial contacts with commercial real estate brokers, contacting potential franchisees, and contributing to marketing costs.  Id.

From November 6-14, 2007, Plaintiffs attended DSS-operated Market Partner College in Clearwater.  At this conference, Brown extolled the progress DSS and its Dagwood's store concept were making, informing attendees that nineteen stores were in various stages of development and that DSS planned to open at least 130 stores by 2008.  Brown never mentioned financial troubles being experienced by DSS at that time.  Id. at ¶ 48.  On the first day of the conference, Plaintiffs spoke with other attendees, who informed them that the Bloomington Dagwood's had filed a lawsuit against DSS for trademark and intellectual property infringement in Indiana.  Plaintiffs asked Defendants about this, but Defendants professed ignorance.  Id. at ¶ 50.

6

Eventually, Ryan admitted that DSS knew that a lawsuit had been filed on October 19, 2007.  He told Plaintiffs that he would communicate with the Bloomington Dagwood's and with DSS Indianapolis counsel and report back to Plaintiffs.  Id. at ¶ 51. According to the Complaint, his subsequent report, which was communicated through an unnamed third party, urged Plaintiffs to "go sell franchises!"  Id.

On various occasions during this period, Plaintiffs asked Defendants why they had not yet received execution documents related to the purported agreement to make Plaintiffs Market Partners.  Id. at ¶ 54.  To Plaintiffs' apparent surprise, on December 7, 2007, P.J. Tamulonis received an email from Brown stating that DSS had been advised by counsel not to finalize any agreements with Plaintiffs, repudiating Defendants' prior conduct related to any purported agreement, and characterizing Plaintiffs' initial $70,000 payment as a "deposit" preceding a "final agreement."  Id. at ¶ 55.  Subsequently, Peter met with DSS's Indianapolis counsel, who told him that Defendants wanted Plaintiffs to discontinue all activities related to DSS for the time being.  Id. at ¶ 56.

During this meeting, Peter again expressed concern about the financial stability of DSS, but DSS's counsel assured him that, based on the information he had received from Defendants, DSS was financially sound.  Id. at ¶ 59.  Within a few days thereafter, however, Plaintiffs received notice that DSS was out of money and out of business.  Id. at ¶ 60.  On April 4, 2008, DSS filed for bankruptcy.  Id. at ¶ 62.  By entry dated April 11, 2008, the lawsuit between DSS and the Bloomington Dagwood's was dismissed without prejudice.  Id. at ¶ 63.

Plaintiffs' $70,000 "deposit" has never been returned to them, and they allege that this and numerous other injuries have resulted from what they characterize as fraudulent concealment and misrepresentation on the part of Defendants.

## *Legal Analysis*

### I.    *Motions to Dismiss for Lack of Personal Jurisdiction*

#### A.    *Standard of Review*

In a diversity action filed under 28 U.S.C. §1332, a federal district court has personal jurisdiction over a non-resident defendant "only if a court of the state in which it sits would have such jurisdiction." Purdue Reseach Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 779 (7th Cir. 2003). A district court may properly exercise personal jurisdiction over a non-resident defendant if a two-step analysis is undertaken and satisfied. First, the party resisting the exercise of jurisdiction must be amenable to service of process under the state's long-arm statute; second, the exercise of personal jurisdiction must comport with the due process clause of the Constitution. Id. Indiana's long-arm statute, Indiana Rule of Trial Procedure 4.4(a), "expand[s] personal jurisdiction to the full extent permitted by the Due Process Clause." LinkAmerica Corp. v. Albert, 857 N.E.2d 961, 966 (Ind. 2006). Thus, the sole question before us is whether due process would be offended were we to exercise personal jurisdiction over the Defendants.

For a court to acquire personal jurisdiction over a defendant, due process requires "that the defendant have such 'minimum contacts' with the forum state as will make the

assertion of jurisdiction over him consistent with 'traditional notions of fair play and substantial justice[.]'" Lakeside Bridge & Steel Co. v. Mountain State Const. Co., 597 F.2d 596, 600 (7th Cir. 1979) (quoting International Shoe v. Washington, 326 U.S. 310, 316 (1945)). In other words, defendants must have "fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quoting Shaffer v. Heitner, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment)).

Personal jurisdiction may be either specific or general. A court may exercise specific jurisdiction over a defendant if the cause of action arises out of or relates to a defendant's purposefully established contacts with the forum state. Helicopteros Nacionals de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984); Burger King Corp., 471 U.S. at 472. General jurisdiction, on the other hand, "is proper when a defendant has 'continuous and systematic business contacts' with a state, and it allows a defendant to be sued in that state regardless of the subject matter of the lawsuit." Premiere Credit of North America, LLC v. AAT Fabrication, Inc., 2005 WL 1123636, at *2 (S.D. Ind. 2005), citing Helicopteros, 466 U.S. at 416; see also Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 713 (7th Cir.2002); RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1277 (7th Cir.1997).

B.    *Individual Defendants*

1.    Dean Young

Defendant Dean Young has not been to Indiana in connection with the facts culminating in this litigation or in the course of developing DSS, nor does he own property in Indiana. Young LLC, a limited liability company owned by Young, owns only ten percent of DSS, Aff. of Young ¶¶ 5-7, and Young avers that he has never been involved with the day-to-day operations of DSS, or with prospective Market Partners. Id. at ¶ 8.


2.    Bob Hartford

Defendant Bob Hartford is a resident of Florida who owns no property in Indiana. He has not been to Indiana in more than ten years and has never been to Indiana to conduct business for DSS, either generally or in connection with the underlying facts of this litigation.  Aff. of Hartford ¶¶ 2-5.  Hartford admits that, as part of his duties for DSS, he engaged in a telephone communication from Florida initiated by Plaintiffs.  Id. at ¶ 8.


3.    William Ryan

Defendant William Ryan, an attorney in Louisiana, joined DSS at its inception as General Counsel and Secretary to the Board of Managers.  Aff. of Ryan ¶ 13.  On October 17, 2007, he was appointed Interim Chairman of the Board of Managers.  Id. Ryan has never been a resident of Indiana.  Id. at ¶ 4.  He has been in Indiana only a few

10

times in his life, including a November 13, 2007 trip to Indianapolis to confer with attorneys regarding the lawsuit then pending before this Court between DSS and the Bloomington Dagwood's.  Id. at ¶ 7.  He also communicated with Plaintiffs over email at least once in the course of the development and deterioration of the business relationship between them, including a communication referenced in the Complaint in which he, through an unnamed third party, allegedly told Plaintiffs to "go sell franchises."  Compl. ¶ 51, 55.

4.      Lamar Berry

Lamar Berry is a resident of New Orleans, Louisiana, who owns no property in Indiana and who has been to Indiana only once, and not in connection with this litigation. Aff. of Berry ¶¶ 2,3, 14.  Berry, who was Chief Executive Officer of DSS until November 2007, met with Plaintiffs in 2007 in Florida and advised them not to worry about the legal dispute with the Bloomington Dagwood's.  Id. at ¶ 7 Compl. ¶¶ 20-26.

C.      *Minimum Contacts*

Defendants contend that the Court's exercise of specific jurisdiction over them would violate due process standards because they did not purposefully avail themselves of any contacts with the forum in connection with this litigation and because personal jurisdiction does not automatically extend to members of an LLC accused of wrongdoing. See, e.g. Graymore, LLC v. Gray, 2007 WL 1059004 (D. Colo. Apr. 6, 2007).

The Complaint contains allegations that Defendants knowingly acted tortiously towards Plaintiffs.  In response to these allegations, each Defendant has submitted an affidavit denying the alleged conduct.  When a defendant moves to dismiss a claim for lack of personal jurisdiction and submits affidavits in support, then the plaintiff "must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." Purdue Research Founation, 228 F.3d at 782.  Accordingly, Plaintiffs have submitted an affidavit, discussed in more detail below, in an attempt to rebut Defendants' responses.

Plaintiffs pin their personal jurisdiction hopes relating to these four Defendants on three rationales: (1) that the Indiana statute aimed at preventing franchisor fraud establishes personal jurisdiction; (2) that the so-called "effects test" of personal jurisdiction, as it was applied in Telular Corporation v. Vitech America, Inc., 1996 WL 616590, at *2 (N.D. Ill. 1996), applies to each Defendant in this case; and (3) that a "conspiracy theory" of jurisdiction supports personal jurisdiction over Defendants.  The first of these is easily dispensed with: although the Indiana statute outlines the liability to which wrongful actors may be subjected for fraudulent conduct connected to franchise activities, it does not amount to a theory of personal jurisdiction nor does it relieve Plaintiffs of their burden to demonstrate that personal jurisdiction over these Defendants comports with due process.[1]

---

[1]The relevant statute expands liability for managers and employees of franchisors who
(continued...)

1.      Effects Theory

"If . . . a commercial defendant's efforts are directed toward a particular

jurisdiction, the fact that the actor did not actually enter the jurisdiction is not of critical

importance."  Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 781

(7th Cir. 2003) (citing Calder v. Jones, 465 U.S. 783, 788-89); see also Indianapolis

Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership, 34 F.3d 410 (7th

Cir. 1994).

In Telular Corporation v. Vitech America, Inc., 1996 WL 616590 (N.D. Ill. 1996),

a Florida corporation and its officers, both Florida citizens, were subject to personal

jurisdiction in Illinois because they were alleged to have engaged in fraudulent conduct

directed toward the plaintiff, a resident of Illinois.  Because the defendant "was aware that

its tortious conduct was directed at an Illinois business . . . [the defendant] had sufficient

contacts with Illinois."  Telular, 1996 WL 61650, at *2.  This "effects theory" of

jurisdiction also applies to employees of a business who were "primary participants" in

the alleged wrongdoing directed at citizens of the forum.  Calder, 465 U.S. at 790; see

also International Healthcare Exchange, Inc. v. Global Healthcare Exchange, Inc., 470

F.Supp.2d 345, 359 (S.D.N.Y.) (rejecting the "argument that personal jurisdiction cannot

be exercised over individuals for acts performed in a representative capacity").

---

[1](...continued)
engage in wrongdoing on behalf of the franchisor.  Ind. Code 23-2-2.5-27, 29.  Pursuant to this
statute, "any person" who makes a material misrepresentation in the course of a franchise sale
may be subjected to liability.  Id.

Plaintiffs attempt to show that each Defendant's "efforts [were] directed toward" Indiana with the factual allegations outlined in the Complaint and set forth in the Affidavit of Peter Tamulonis.  This affidavit makes specific factual allegations relating to the conduct of Defendants, including: (1) Hartford's telephone and mail contacts with Plaintiffs in Indiana; (2) DSS's Uniform Franchise Offering Circulars, which identify Defendants as having "management responsibility of [the DSS] business concerning the franchise described"; (3) Defendants' knowledge in and involvement with the dispute with the Bloomington Dagwood's; (4) at least one DSS press release allegedly stating that Young had a "hands-on" role in the company; and (5) documentation of decisions made by the Board of Managers of DSS.  See, e.g. Aff. of Tamulonis ¶¶ 18, 20, 21, 22, 24, 30, 74-75 (Ex. 3, 7, 9).  Plaintiffs bear the burden of demonstrating, through this evidence, that the exercise of personal jurisdiction is proper.  Cent. States, S.E. & S.W. Areas Pension Fund v. Phencorp Reinsurance Co., 440 F.3d 870, 875 (7th Cir. 2006).  After careful consideration, we conclude that they have failed to meet this burden.

In the case at bar, each Defendant has submitted admissible evidence substantively refuting Plaintiffs' allegations of contacts with the state of Indiana.  Defendant Young's affidavit establishes that he was not involved in the day-to-day business of DSS, that he had no dealings with DSS Market Partners or franchisees, and that he had no business dealings with Plaintiffs.  Aff. of Young ¶¶ 8-9.  Plaintiffs' response to this is set out presumably in the Tamulonis Affidavit, which contains vague, speculative statements attempting to establish that Young "knew," "must have known," or "should have known"

of DSS's or other individual Defendants' alleged wrongful acts.  Plaintiffs' speculative

response is entirely insufficient to show that personal jurisdiction is appropriate here.

Moreover, Plaintiffs' assertions are largely comprised of hearsay.  In order to demonstrate

minimum contacts adequately,  evidence must be admissible, including the requirement

that factual allegations in affidavits be based on firsthand personal knowledge.

KnowledgeAZ, Inc. v. Jim Walter Resources, Inc., 452 F.Supp.2d 882, 888 (S.D. Ind.

2006) (striking portions of the plaintiff's affidavit because they were not based on

firsthand personal knowledge and/or consisted of inadmissible hearsay).

In addition to being speculative and largely inadmissible, the Tamulonis Affidavit

averments are often misleading, such as when the affidavit asserts that the Offering

Circular indicates that each Defendant was a "principal officer" or "executive," when

these statements do not, in fact, appear in that document in the manner Plaintiffs assert.

Plaintiffs also misquote the DSS press release, which did not say that Young had a "hands

on role" in the franchising business but rather that he had a "hands on role in helping to

design the menus and floor design" at prospective restaurants.  In short, Plaintiffs'

allegations related to Young are attenuated and inaccurate and, as a whole, insufficient to

establish that he engaged in any "efforts directed" toward Indiana in relation to the

present controversy.  Accordingly, Plaintiffs' "effects theory" of jurisdiction cannot be

applied to Young.

In the Complaint and Tamulonis Affidavit, Plaintiffs largely lump Defendant Ryan

in with other "Defendants" in attempting to establish personal jurisdiction over him.  Our

15

review of the record shows that Ryan's primary contact with Indiana as potentially related to this lawsuit, occurred when he responded to trademark litigation initiated against DSS by the Bloomington Dagwood's in Indiana in October 2007.  This conduct, which is related entirely to another case and not the present one, is insufficient as a basis for specific jurisdiction.  See Hyatt Intern. Corp. v. Coco, 302 F.3d 707 (7th Cir. 2002).  The only other Ryan contact alleged by Plaintiffs is that Ryan, through an unnamed third party, instructed them to "go sell franchises."  Compl. ¶ 51.  However, Plaintiffs' affidavit supporting this allegation is insufficient because it relies solely on inadmissible evidence, KnowledgeAZ, 452 F.Supp.2d at 888.  Further, Ryan has specifically denied ever making this statement. Aff. of Ryan ¶ 18.  Thus, as with Young, Plaintiffs simply have failed to meet their burden of demonstrating that facts existed sufficient to establish that Ryan had minimum contacts with the forum.

The sole contacts Plaintiffs contend for Defendant Berry are his signature on a Consent to Service of Process in Indiana form and a welcome letter he allegedly sent to Plaintiffs on September 24, 2007.  These two isolated, highly attenuated contacts fall far short of what typically suffices for the exercise of personal jurisdiction.  The defendants in Telular, for example, were alleged to have been primary participants in many instances of specific fraudulent behavior, which they never denied by affidavit or otherwise. Telular, 1996 WL 616590, at *3.   Berry's alleged conduct, by comparison, is practically nonexistent.  Plaintiffs cite no case supporting personal jurisdiction on such minimal and

irrelevant contacts as these.  Accordingly, we deem them entirely insufficient, as a matter of law, to subject Berry to personal jurisdiction in Indiana.

Plaintiffs allegations relating to Defendant Hartford either took place entirely in Florida, or were contacts initiated by Plaintiffs, or were non-essential negotiations that do not underpin Plaintiffs' claims.  Aff. of Hartford ¶ 9.  Plaintiffs once again offer no admissible evidence to refute these facts.  KnowledgeAZ, 452 F.Supp.2d at 888.  The only other allegations even remotely relating to Hartford are the repeated allegations that all Defendants, as employees and/or board members of DSS "knew or should have known" about alleged wrongdoing.  "[V]ague generalizations or 'conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss.'" Search Force, Inc. v. Dataforce Int'l, Inc., 112 F.Supp.2d 771, 774 (S.D. Ind. 2000) (quoting Cushing v. City of Chicago, 3 F.3d 1156, 1161 n.5 (7th Cir. 1993)).  Therefore, Plaintiffs have failed to establish the contacts required, as between Hartford, the State of Indiana, and the controversy at hand.  See Helicopteros, 466 U.S. at 414.

2.    Conspiracy Theory

In an attempt to make their "effects theory" rationale more robust, Plaintiffs have included a "civil conspiracy" theory of jurisdiction.  Jurisdiction under this rationale requires a plaintiff to submit evidence showing that each individual Defendant was a member of a conspiracy that sought "to accomplish an unlawful purpose or to accomplish

some lawful purpose by unlawful means." <u>Sumpter v. Am. Tobacco Co.</u>, 2000 WL 1449851, at *17 (S.D. Ind. May 4, 2000).

In the case at bar, Plaintiffs allegations outlining the way in which each individual was involved in this conspiracy are bare at best. The Complaint and the Tamulonis Affidavit consist once again largely of broad allegations referring to "Defendants," as opposed to specifying one or several named individuals. Moreover, once again, most of the allegations do not extend beyond assertions that Defendants "must have known" about the alleged wrongdoing. Such an averment is entirely insufficient because Plaintiffs have not presented "any specific facts that would support a reasonable inference" that any of these individual Defendants participated in a conspiracy to commit fraud. <u>Employee Benefit Managers, Inc. v. A Medex Transition Admin. Co.</u>, 2006 WL 1128646, at *5 (N.D. Ind. Apr. 24, 2006). These deficiencies are further exacerbated by the inadmissibility of the majority of Plaintiffs' evidence submitted in support of the factual allegations.

For all of the foregoing reasons, Plaintiffs have failed in their efforts to demonstrate that Young, Ryan, Hartford, and Berry have sufficient minimum contacts with the forum. Accordingly, an exercise of personal jurisdiction over these individual Defendants under the circumstances here would offend traditional notions of fair play and substantial justice as well as due process, because the evidence makes clear that each lacks sufficient contacts with the forum.

## II.    *Robert Myers's Motion for Change of Venue*[2]

Defendant Robert Myers seeks transfer of this cause to the Eastern District of Louisiana and referral of the matter to the Eastern District of Louisiana Bankruptcy Court, pursuant to 28 U.S.C. § 1404(a) and 28 U.S.C. § 157(a).  This motion is opposed not only by Plaintiffs but also by at least three of Myers's co-Defendants.

### A.    *The Present Lawsuit and the Bankruptcy Proceeding*

The Motion to Transfer seeks to reconcile two purportedly conflicting proceedings, one relating to the case at bar and the other, separate matter pending in bankruptcy court in Louisiana.  The present cause of action was filed in Marion Superior Court on January 15, 2009, and was subsequently removed to this Court.  This lawsuit does not name DSS as a party defendant but instead names six directors, officers, and/or principals of DSS.  The claims against Defendants in the case at bar arise from dealings between the parties related to the acquisition of franchise rights in a new restaurant offered by DSS.  Plaintiffs seek a trial by jury on the following specific causes of action: conversion, breach of trust, fraudulent misrepresentation, and Indiana state franchise law violations.

In an entirely separate case, DSS filed a Chapter 11 Petition with the United States Bankruptcy Court for the Eastern District of Louisiana on April 4, 2008 ("Bankruptcy

---

[2]Defendants Ryan and Young have filed a Motion for Leave to File Surreply Brief in Opposition to this Motion to Transfer.  The Motion for Leave is hereby <u>granted</u>.

Proceeding"). On October 10, 2008, Plaintiffs filed a Proof of Claim in the Bankruptcy Proceeding, as they were required to do in order to preserve any rights they had against DSS. Plaintiff Peter Tamulonis filed an affidavit in our case stating: "Although I did submit a proof of claim when directed, no one has entered an appearance on behalf of the Plaintiffs in the bankruptcy action and we have not been routinely served with the papers or orders filed in the bankruptcy action . . . ." Aff. of Tamulonis ¶ 90.

Relevant to the Motion to Transfer as well are three insurance policies providing coverage to Defendants, as "Insured Persons," for claims similar to the ones asserted by Plaintiffs. The insurers under these policies sought relief from the stay in the Bankruptcy Proceeding, but the Bankruptcy Court denied that request, which order the insurers have appealed to the United States District Court for the Eastern District of Louisiana.

B.   *Discussion*

Under 28 U.S.C. § 1404(a), the moving party bears the burden to show that the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice. State Farm Mut. Auto. Ins. Co. v. Estate of Bussell, 939 F.Supp. 646, 651 (S.D. Ind. 1996). "[A] party moving for transfer bears the burden of showing not merely that transfer would be more convenient, but '*clearly* more convenient.'" Alpha Tau Omega Fraternity v. Pure Country, Inc., 85 F.Supp.2d 951, 959 (S.D. Ind. 2002) (emphasis in original) (quoting Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219-20 (7th Cir. 1986)). As a general rule, a plaintiff's choice of forum is given significant

weight and will not be disturbed unless the other factors weigh substantially in favor of transfer.  In re Nat'l Presto Indus., Inc., 347 F.3d 662, 664 (7th Cir. 2003).

1.      Convenience of the Parties

Of the eight individual parties named as Defendants in this action, only Myers has claimed that the Eastern District of Louisiana would be a more convenient forum. Indeed, the other Defendants have clearly maintained that the Louisiana court would be a less convenient forum.  All of the parties have retained Indiana counsel and engaged in extensive litigation efforts in Indiana court(s).  Shifting the convenience from the seven other individuals involved in this litigation to Meyers would violate the longstanding rule that "the effect of a transfer cannot be a mere shift of inconveniences."  Buztronics, Inc. v. Theory3, Inc., 2005 WL 1113873, at *4 (S.D. Ind. May 9, 2005) (quoting Moore v. AT&T Latin Am. Corp., 177 F.Supp.2d 785, 789 (N.D. Ill. 2001)).  Accordingly, this factor weighs heavily against transfer.

2.      The Convenience of Witnesses

The convenience of witnesses is often deemed "the most important factor in the transfer balance."  Am. Commercial Lines, LLC v. Northeast Maritime Institute, Inc., 588 F.Supp.2d 935, 946 (S.D. Ind. 2008) (Barker, J.) (citation omitted).  This factor primarily addresses the availability of non-party witnesses to participate in trial, as courts assume that parties will be sufficiently motivated to have their own employees or other allies

appear for trial wherever it is held.  Aearo Co. v. Bacou-Dalloz USA Safety, Inc., 2004
WL 1629566, at *2-3 (S.D. Ind. Jul. 21, 2004).

      Despite the significance of this factor, Myers affords it little weight in his briefing.
Indeed, his argument is entirely speculative about "unwilling witnesses" who "will be in
Florida" and thus reluctant to travel to Indiana.  This sort of generalized, speculative
statement is insufficient to support transfer.  E.g., Audi AG v. D'Amato, 341 F.Supp.2d
734, 750-51 (E.D. Mich. 2004).  Furthermore, it is unclear why non-party witnesses in
Florida would be more motivated to travel to Louisiana than to Indiana.  In contrast to
such unfounded speculation, Plaintiff's Complaint identifies specific potential non-party
witnesses who would be subject to this Court's subpoena power at trial.  See Compl. ¶¶
22-31, 37-42.  Accordingly, the convenience to witnesses also weighs heavily against
transfer.


3.     Situs of Material Events and Access to Proof

      Both the "situs of material events" and "the ease of access to sources of proof" are
factors considered in evaluating the propriety of transfer and the convenience of the
parties.  Kalamazoo Realty Venture Ltd. P'ship v. Blockbuster Entm't Corp., 249 B.R.
879, 889 (N.D. Ill. 2000).  In addition to being an appropriate venue because party and
witness convenience, the Southern District of Indiana is preferred over Louisiana as a
venue because the alleged wrongs arguably had their primary impact in Indiana, not
Louisiana.  Haver v. National Union Electric Co., 854 F.2d 259, 261 (7th Cir. 1988);

Simon v. U.S., 805 N.E.2d 798 (Ind. 2004).

Moreover, because the documents relevant to this lawsuit are apparently spread out over Florida, Louisiana, and Indiana, the "access to proof" factor in the analysis is, at most, neutral, neither favoring nor disfavoring transfer.  Further, because "[d]ocuments and records are easily transportable," we must accord this factor little significance. Kalamazoo Realty, 249 B.R. at 889.  Given that the alleged effects of material events underlying Plaintiffs' claims occurred in Indiana and that access to sources of proof would be easily accomplished in any of the potential forums, the relevant geographic factors do not support Myers's Motion to Transfer.

4.      Interest of Justice

In advancing his arguments about the interest of justice, Myers relies primarily on certain orders issued by the Bankruptcy Court, which held that the proceeds of the subject insurance policies covering DSS officers and directors are the property of the DSS bankruptcy estate.  According to Myers, these orders threaten to create an untenable situation unless the Louisiana bankruptcy court has control of this case.  This argument fails for various reasons.

As an initial matter, transferring the case to the Eastern District of Louisiana pursuant to § 1404(a) would not solve any of the problems Myers envisions because such a transfer would place this litigation under the jurisdiction of the United States District Court for the Eastern District of Louisiana, not the bankruptcy court.  This is presumably

why Myers also requests that the Court order the case to be referred to the bankruptcy

court.  However, such an order of referral would be inappropriate when viewed in terms

of the interest of justice.

Plaintiffs have demanded a jury trial, maintaining that only a trial will effectively

safeguard their interests.  Section 157(e) authorizes bankruptcy judges to conduct jury

trials under certain limited circumstances, but only with the "express consent" of all of

the parties.  28 U.S.C. § 157 (e) ("If the right to a jury trial applies in a proceeding that

may be heard under this section by a bankruptcy judge, the bankruptcy judge may

conduct the jury trial if specially designated to exercise such jurisdiction by the district

court and with the express consent of all the parties.").  Assuming such a designation

might be made by the district court, many of the parties in the case at bar have made it

clear that they would not consent to a jury trial before the bankruptcy court.  Thus,

referral to the Bankruptcy Court would be inconsistent with Plaintiffs' ability to assert

their rights.  See Good v. Kvaerner U.S., Inc., 2003 WL 21755782 (S.D. Ind. July 25,

2003); Mid American Concrete Const., Inc. v. Sears, Roebuck & Co., 1993 WL 177140,

at *2 (N.D. Ill. 2993).

The inappropriateness of referring this case to the Bankruptcy Court is further

underscored by the fact that the present matter is not "related" to the DSS bankruptcy.

"[A] case is 'related' to a bankruptcy when the dispute 'affects the amount of property for

distribution or the allocation of property among creditors.'"  In re Fedpak Sys., Inc., 80

F.3d 207, 213 (7th Cir. 1996) (quoting In re Memorial Estates, Inc., 950 F.2d 1364, 1368

(7th Cir.), <u>cert. denied</u>, 504 U.S. 986 (1992)).  According to Myers, this is a related proceeding because the Bankruptcy Court's orders hold that the proceeds of the insurance policies are property of the DSS bankruptcy estate.  Thus, Myers posits, a potential conflict could arise between ultimate liability determinations in the present case and the allocation of funds among creditors in the Bankruptcy Proceeding.  However, where, as here, the debtor's right to the proceeds is only hypothetical, and the debtor has made no actual claim to payment under the policy, no such conflict in the allocation of expenditures exists.  <u>See</u> <u>In re First Central Financial Corp.</u>, 238 B.R. 9 (Bankr. E.D.N.Y. 1999); <u>In re Allied Digital Techs. Corp.</u>, 306 B.R. 505, 512 (Bankr. D. Del. 2004).

Moreover, bankruptcy law requires that the debtor be a party to the separate proceeding: "where a party has filed a proof of claim in a debtor's case, any action asserted by that party *against the debtor* that raises the same issues as those encompassed by the proof of claim is a core proceeding under the authority of 28 U.S.C. § 157(b)(2)(B)." <u>In re Best Reception Systems, Inc.</u>, 220 B.R. 932, 944 (Bankr. E.D. Tenn. 1998) (emphasis added).  The case at bar is not against the debtor, DSS, which further demonstrates the inappropriateness of referring this case to the Bankruptcy Court.

Myers also contends that the case at bar must be transferred in order to avoid an ongoing instance of either concurrent jurisdiction or res judicata.  <u>See</u> Myers's Br. ¶ 2 ("Plaintiffs are now pursuing two lawsuits pending in two federal courts that prosecute essentially the same action.") This assertion is contrary to the facts, as neither issue is, in fact, present.  As an initial matter, neither of Myers's concurrent jurisdiction or res

25

judicata arguments is relevant because a Proof of Claim submitted by a creditor does not "constitute a 'case' or 'proceeding.'" <u>In re E&S Facilities, Inc.</u>, 181 B.R. 369, 371 (Bankr. S.D. Ind. 1995).

Even if the Proof of Claim were a relevant proceeding, it would constitute a duplicative suit only if the "claims, parties, and available relief do not significantly differ between the two actions." <u>Serlin v. Arthur Adnerson & Co.</u>, 3 F.3d 221, 223 (7th Cir. 1993). The parties involved in Plaintiffs' Proof of Claim are not the same parties as those involved in the present action. In the former, DSS is the opposing party; in the latter, individual members of the DSS Board of Managers are the opposing parties. Furthermore, the claims differ in that the claim in the present case focuses upon individual liability and also includes an allegation that Defendants violated specific Indiana statutory provisions related to franchising. Because the parties and claims significantly differ, there is no basis for concurrent jurisdiction to exist.

Nor is this case, as Myers suggests, a case involving res judicata. The application of this doctrine is appropriate only if identity of parties is present. <u>Magnus Elecs, Inc. v. La Republica Argentina</u>, 830 F.2d 1396, 1400 (7th Cir. 1987). Because identity of parties is not present as between the two actions, and because the claims involved are also different, res judicata is not implicated.[3]

---

[3]Myers also contends that transfer is necessary in the interest of justice to prevent "judicial review" of this action by the Bankruptcy Court. Myers cites no case in support of his contention that the decisions of this Court would be subject to review by the Bankruptcy Court, and we have found no legal authority for such a proposition. The bankruptcy judge has done no

(continued...)

26

Contrary to Myers's many assertions, the interest of justice will best be served by Plaintiffs' case, such as it is at this juncture, remaining in Indiana.  The interest of justice analysis, which recognizes the efficient administration of the court system, Coffey, 796 F.2d at 221, "include[s] such concerns as ensuring speedy trials . . . and having a judge who is familiar with the applicable law try the case."  Heller Financial, Inc. v. Midwhey Powder Co, Inc., 883 F.2d 1286, 1293 (7th Cir. 1989); see also DeMert & Dougherty, Inc. v. Phoenix Container, Inc., 271 B.R. 821, 846 (Bankr. N.D. Ill. 2001) ("A state's interest in vindicating its laws and policies can be a factor in determining whether a lawsuit should be heard in a court within that state.").  Plaintiffs have demanded a jury trial and their claims will be analyzed under Indiana law, both of which weigh clearly against transfer.  Westminster Investments, LLC v. International Thoroughbred Breeders, Inc., 2007 WL 1302974, at *5 (N.D. Ill. May 2, 2007).  This Court need not, should not, and will not insert itself into an ongoing dispute in the Louisiana District and Bankruptcy Courts.  Denial of Myers's motion to transfer is the best method of staying out of that controversy.

For all of the foregoing reasons, transfer and referral of this case to the Bankruptcy Court for the Eastern District of Louisiana would be inappropriate.  Accordingly, Myers's Motion to Transfer shall be denied.

---

[3](...continued)
more than declare that it will not give up-front approval to payments by the insurers in that proceeding.  The substantive results of this action, including questions of liability, will not be subject to review by the bankruptcy judge.

### III.    Motion to Dismiss for Failure to Join a Required Party

### A.    Standard of Review

Defendant William Ryan moves for dismissal of the claims against him pursuant to Federal Rule of Civil Procedure 12(b)(7), which permits a party to move for the dismissal of an action when the other party has "fail[ed] to join a required party" under Rule 19(a), which provides:

> (a) Person Required to Be Joined if Feasible.
> (1) *Required Party*. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.P. 19(a)(1). If a required party has not been joined, and if joinder is not feasible, Rule 19(b) requires the court to determine whether, in "equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed.R.Civ.P. 19(b). We resolve this issue by answering a series of questions:

28

1.      Is DSS is a Required Party?[4]

To determine whether DSS is a required party, we must decide first whether "complete relief" may be accorded to the parties in the absence of DSS.

Ryan contends that the Court cannot "accord complete relief" in DSS's absence. "Complete relief" under Rule 19(a)(1) refers only to the Court's ability to grant relief to the existing parties, and not between a party and the absent person. Showtime Game Brokers, Inc. v. Blockbuster Video, Inc., 151 F.R.D. 641, 646 (S.D. Ind. 1993). Further, "the Court must consider the effectiveness that a judgment for either party will have in terminating the controversy." Id.

Ryan first argues, somewhat tortuously, that "joint tortfeasor considerations" necessarily inhibit this Court's ability to accord complete relief. Ryan is apparently concerned that, if Defendants are ultimately held jointly and severally liable for Plaintiffs' claims, it is "conceivable that a Defendant in this action . . . may seek contribution in another jurisdiction" from a co-Defendant or DSS. Ryan's Br. in Supp. At 7. Ryan's assertion, which is no more specific than this, is entirely too vague and attenuated to convince the Court that a judgment in this action will be inadequate to terminate the controversy between and among the existing parties. An alleged joint tortfeasor is not a required party for Rule 19 purposes. See Axiom Worldwide, Inc. v. Becerra, 2009 WL 1347398, at *4 (M.D. Fla. 2009) (quoting Temple v. Synthes Corp. Ltd., 498 U.S. 5, 7

_____

[4]The parties agree that DSS is subject to service of process and would not disrupt the Court's subject-matter jurisdiction.

(1990)).  Moreover, although Ryan expresses a concern that the laws of other

jurisdictions will impose contribution obligations upon the multiple defendants, it is a

settled matter that Indiana law governs this action, and Indiana law does not permit

contribution among joint tortfeasors, <u>Elcona Homes Cor. V. McMillan Bloedell, Ltd.</u>, 475

N.E.2d 713, 715 (Ind. Ct. App. 1985).  Ryan's contention that the law of other

jurisdictions may at some future point apply is therefore, at best, speculative.  For these

reasons, DSS's absence will not inhibit the Court's ability to accord complete relief

between the parties.

 We next address this question: does DSS claim an interest?  Ryan contends that

DSS does "claim an interest" in the present action, Fed.R.Civ.P. 19(a), for two reasons:

(1) that the action is, in fact, one against DSS; and (2) that DSS claims an interest by

virtue of an indemnification agreement between Ryan and DSS.  As to the first, it is

undisputed that the present cause of action is brought against individual Defendants, and

that DSS is not a named party.  Ryan contends that, because the Complaint repeatedly

refers to DSS alongside the Defendants in setting forth its factual allegations, <u>e.g.</u> Compl.

¶¶ 1, 2, 7, 10, 13, 23, the "practical reality is that the alleged actions or omissions of the

named individual Defendants are the very same actions or omissions [Plaintiffs] have

alleged as the basis for their claims against DSS, were it made a party to this action."

Reply at 4.

 Although Ryan is correct that the Complaint makes repeated mention of DSS, his

contemplation of the "practical reality" of the suit is not reflected in the nature of

30

Plaintiffs' claims.  The Complaint alleges claims for fraudulent concealment, misrepresentation, conversion, and related statutory violations, all of which have clearly been leveled against the individual Defendants, and none of which is alleged to have been conduct attributed to DSS.  Accordingly, Ryan's contention that the action is actually one against DSS is misplaced, and this argument thus does not suffice to demonstrate that DSS "claims an interest" in the case at bar.[5]

Ryan next contends that DSS "claims an interest" by virtue of an Indemnity Agreement, entered into by Ryan and DSS.  According to Ryan, if he is found liable to Plaintiffs, then he may later attempt to collect from DSS under the Indemnity Agreement. However, as the Seventh Circuit has recently held, this sort of attenuated "interest" is not of a type contemplated by Rule 19 because "that day may never come." Askew v. Sheriff of Cook County, Ill., 568 F.3d 632, 637 (7th Cir. 2009).  In other words, "for the present, [DSS] does not become an 'indispensable' party just because it may need to indemnify [Ryan] in the future any more than an insurance company must be included as a defendant in a suit against its insured."  Id.  We therefore conclude, as the Seventh Circuit did in Askew, that DSS "is not a party that must be joined if feasible, within the meaning of Rule 19, in a case brought against [Ryan] in his individual capacity."  Id.

_____

[5]Ryan takes this argument a step further, asserting that Plaintiffs intentionally left DSS absent so as to avoid duplicative litigation as between this Court and the Louisiana Bankruptcy Court.  As discussed in more detail in Section II supra, however, any assertion that this action and the Louisiana proceeding are duplicative is unavailing.

2.      If DSS Were a Required Party, Should the Case be Dismissed?

Assuming *arguendo* that DSS is a required party under Rule 19(a), the Court could

not simply make DSS a party as provided in Rule 19(a)(2). DSS cannot be joined to this

action because it is in engaged in a bankruptcy proceeding.  Joinder in such cases is

prohibited by statute.  <u>See</u> 11 U.S.C. § 362(a) ("[A bankruptcy action] operates as a stay,

applicable to all entities, of . . . the commencement . . . of a judicial, administrative, or

other action or proceeding against the debtor that was or could have been commenced

before the commencement of the case under this title.").

"[I]f the court determines that a party meets the criteria of Rule 19(a)(1)(A) and

(B), but the party cannot be joined," then the court must "turn to Rule 19(b) and decide

what to do about the problem."  <u>Askew</u>, 568 F.3d at 635.  In such an instance, "dismissal

is not automatic. Instead, the court must 'determine whether, in equity and good

conscience, the action should proceed among the existing parties or should be dismissed.'

Rule 19(b) spells out factors for the court to consider in making that judgment, with an

emphasis on practical measures that will allow either the entire suit or part of it to go

forward."  <u>Id.</u>  The Rule 19(b) factors include:

   (1)   the extent to which a judgment rendered in the person's absence might
         prejudice that person or the existing parties;
   (2)   the extent to which any prejudice could be lessened or avoided by:
         (A)   protective provisions in the judgment;
         (B)   shaping the relief; or
         (C)   other measures
   (3)   whether a judgment rendered in the person's absence would be
         adequate; and
   (4)   whether the plaintiff would have an adequate remedy if the action were

32

dismissed for nonjoinder.

Fed.R.Civ.P. 19(b).

No particular weight is given to each factor, and the court must make a fact-sensitive assessment.  See Extra Equipamentos E Exportacao LTDA. v. Case Corporation, 361 F.3d 359, 361 (7th Cir. 2004).  Moreover, courts are reluctant to dismiss for failure to join where doing so deprives the plaintiff of his choice of federal forum. Davis Companies v. Emerald Casino, Inc., 268 F.3d 477, 481 (7th Cir. 2001).

A balance of the 19(b) factors clearly indicates that, even if DSS were a non-joined required party, the case could and should proceed.  A judgment rendered in this case in the absence of DSS would not prejudice either DSS or Ryan because the duties owed between those two parties are entirely separate and independent of the duties owed by Ryan to Plaintiffs.  Furthermore, and critically, the dismissal of this action would leave Plaintiffs only with the remedy available to them in bankruptcy court, which would be inadequate under the circumstances.  The record indicates that the bankruptcy estate is lacking in assets, which may leave Plaintiffs with an inadequate remedy under their Proof of Claim in that proceeding.  Moreover, Plaintiffs would only be able to bring claims such as those in the case at bar in the bankruptcy court if this matter were "related to" that proceeding, and if the bankruptcy court had proper jurisdiction to conduct a jury trial.  As discussed previously, the likelihood of that prospect is remote.  Accordingly, even assuming that DSS were a required party, the Rule 19(b) factors weigh in favor of proceeding with this case, even in the absence of DSS.

For all of the foregoing reasons, Ryan's Motion to Dismiss pursuant to Rule 12(b)(7) shall be <u>denied</u>.

**IV.    *Robert Myers's Motion to Dismiss Pursuant to Rule 12(b)(6)*[6]**

A.    *Standard of Review*

Defendant Robert Myers contends that each cause of action stated in the Complaint fails to state a claim as to him because Plaintiffs have alleged no single fact accusing him of individual wrongdoing.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand the requirements of Federal Rules of Civil Procedure 8 and 12(b)(6).  <u>Id.</u>  A party moving to dismiss nonetheless bears a weighty burden. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the

---

[6]Embedded in Myers' Motion to Dismiss is an argument he refers to as a Motion to Strike, in which he contends that Plaintiffs have referred to materials outside the scope of the Complaint, and that the Court should not consider these materials.  A court "cannot consider material outside the complaint without treating the motion as one for summary judgment." <u>Gavin v. AT&T Corp.</u>, 2004 WL 2260632, at *1 (N.D. Ill. Sep. 30, 2004).  However, "[i]n ruling on a 12(b)(6) motion, a district court may take judicial notice of matters of public record without converting the 12(b)(6 motion into a motion for summary judgment."  <u>Anderson v. Simon</u>, 217 F.3d 472, 474-75 (7th Cir. 2000).  Myers fails adequately to identify the materials he finds objectionable.  Given that we address the present motion and the sufficiency of the Complaint without reference to any impermissible materials, the Motion to Strike is <u>denied</u>.

34

allegations in the complaint." Twombly, 550 U.S. 544, 563 (2007) (citing Sanjuan v.
American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) ("[At
the pleading stage] the plaintiff receives the benefit of imagination, so long as the
hypotheses are consistent with the complaint.")).  In addressing a Rule 12(b)(6) motion,
we treat all well-pleaded factual allegations as true, and we construe all inferences that
reasonably may be drawn from those facts in the light most favorable to the non-movant.
Lee v. City of Chicago, 330 F.3d 456, 459 (7th Cir. 2003); Szumny v. Am. Gen. Fin., 246
F.3d 1065, 1067 (7th Cir. 2001).


B.    *Fraud*

    Myers first challenges Plaintiffs' fraud-related allegations, which must surmount

the additional burden of pleading particularity imposed by Federal Rule of Civil

Procedure 9(b).  As explained by the Seventh Circuit,

> [t]o meet the particularity requirements of Rule 9(b), a complaint must specify
> the identity of the person making the misrepresentation, the time, place, and
> content of the misrepresentation, and the method by which the
> misrepresentation was communicated to the plaintiff.  A complaint that
> attributes misrepresentations to all defendants, lumped together for pleading
> purposes, generally is insufficient.

Sears v. Likens, 912 F.2d 889, 893 (7th Cir. 1990).

    The Complaint here generally alleges that all of the Defendants are liable for

various fraudulent statements, but it does not identify which facts were misrepresented or

concealed by Myers.  Plaintiffs urge that, although the allegations are admittedly vague,

the Complaint suffices to put Myers on notice of the fraud claims against him because it identifies alleged misrepresentations that Myers "knew" or "must have known" about. E.g. Compl. ¶¶ 49, 56, 59, 60.  According to Plaintiffs, it is reasonable to infer from the facts alleged, which identified specific statements, that the Board of Managers knew about the misrepresentations.  Besides identifying specific statements, however, the Complaint provides no more detail whatsoever.

Without some detail specifying the wrongful conduct alleged, Plaintiffs' fraud claims do not satisfy the heightened pleading requirement.  As in Sears, Plaintiffs "fail to satisfy [the] 9(b) standard: their Complaint is bereft of any detail concerning who was involved in each allegedly fraudulent activity, how the alleged fraud was perpetuated, or when the allegedly fraudulent statements were made.  Rather, the complaint lumps all the defendants together and does not specify who was involved in what activity."  Sears, 912 F.2d at 893.  Thus, Plaintiffs' claims of fraud against Myers do not withstand the 12(b)(6) and 9(b) standards.  Accordingly, those claims, which include Plaintiffs claims under the Indiana statute prohibiting franchise fraud, Enservco, Inc. v. Ind. Sec. Div., 623 N.E.2d 416, 423 (Ind. 1993); Cont'l Basketball Ass'n, Inc. v. Ellenstein Enters., Inc., 669 N.E.2d 134, at 137 (Ind. 1996), as well as claims for common law fraud, require dismissal.


*C.*     *Joint Tortfeasor Liability*

The Complaint also alleges that each of the Defendants, including Myers, is liable for the fraudulent actions of the other Defendants, under a theory of joint tortfeasor

36

liability.  In Indiana, alleging that a wrongdoer is a joint tortfeasor still requires "some

degree of individual wrongdoing or reason to impose liability" on that particular

defendant.  Nance v. Miami Sand & Gravel, LLC, 825 N.E.2d 826, 835 (Ind. Ct. App.

2005).  The Complaint provides no such reason.  Although Plaintiffs attempt to connect

Myers to the other Defendants because of the business relationships among them, see

Winkler v. V.G. Reed & Sons, Inc., 638 N.E.2d 1228, 1231 (Ind. 1994), for a corporate

officers to be held liable, "[s]ome additional connection with the tort is required."

Bowling v. Holdeman, 413 N.E.2d 1010, 1014 (Ind. Ct. App. 1980); see also State Civil

Rights Comm'n v. County Line Park, Inc., 738 N.E.2d 1044, 1050 (Ind. 2000).  Because

the Complaint provides no "additional connection" between Myers and the tort claims

alleged, joint and vicarious liability theories do not save Plaintiffs' fraud claims from

dismissal.


D.    *Conversion*

The Complaint also alleges that Defendants converted Plaintiffs' property, in

particular the $70,000 Plaintiffs paid to Defendants in furtherance of the purported

franchising agreement, which Defendants thereafter allegedly used for their own

purposes, with no benefit to Plaintiffs.  In Indiana, conversion is generally proven by

demonstrating that the perpetrator "knowingly or intentionally exert[ed] unauthorized

control over the victim's property, causing pecuniary loss to the victim."  Estate of

Verdak v. Butler University, 856 N.E.2d 126, 137 (Ind. Ct. App. 2006).  The Complaint

alleges that Myers, along with the other Defendants, approved of the use of Plaintiffs' funds, even though they knew that DSS would likely go out of business.  Compl. ¶ 65; see also id. at ¶ 61.

Because conversion is not a fraud-related allegation, the sufficiency of the Complaint in this regard is assessed under the normal 12(b)(6) pleading standards. Plaintiffs' allegations are more than mere recitals of the cause of action; they connect Defendants, including Myers, with the alleged misappropriation of specific funds at a specific point in time for a specific purpose.  Therefore, although the Complaint does not plead conversion with the particularity preferred, it does "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 129 S.Ct. at 1949.  Accordingly, Myers's Motion to Dismiss this claim shall be denied.

E.      *Breach of Trust*

The Complaint also contains a common law claim for breach of trust.  Under Indiana law, a claim for breach of trust "is a claim for breach of fiduciary duty" and thus requires a fiduciary relationship.  Shriner v. Sheehan, 773 N.E.2d 833, 846 (Ind. Ct. App. 2002).  A fiduciary relationship does not exist unless there is a relationship of trust and confidence between the parties.  Paulson v. Centier Bank, 704 N.E.2d 482, 490 (Ind. Ct. App. 1998).  A confidential relationship exists when confidence is reposed by one party in another with resulting superiority and influence exercised by the other.  Id.  The Complaint contains no allegations supporting an inference that a confidential relationship

38

existed, nor that Myers took unconscionable advantage of Plaintiffs.  Therefore, the

Complaint lacks sufficient factual matter state a plausible claim to relief for breach of

trust.  Iqbal, 129 S.Ct. at 1949.


## V.   *Conclusion*

For the reasons detailed in this entry, Defendant Young's Motion to Dismiss for

Lack of Personal Jurisdiction is <u>GRANTED</u>; Defendant Hartford's Motion to Dismiss for

Lack of Personal Jurisdiction is <u>GRANTED</u>; Defendant Myers's Motion to Dismiss

pursuant to 12(b)(6) is <u>GRANTED</u> in part and <u>DENIED</u> in part (only with regard to the

conversion claim); Defendant Myers's Motion for Change of Venue is <u>DENIED</u>;

Defendant Myers's Motion to Strike is <u>DENIED</u>; Defendant Ryan's Motion to Dismiss

for Lack of Personal Jurisdiction is <u>GRANTED</u>; Defendant Ryan's Motion to Dismiss

Pursuant for Failure to Join Party is <u>DENIED</u>; Defendant Berry's Motion to Dismiss for

Lack of Personal Jurisdiction is <u>GRANTED</u>; and the Motion to File Surreply is

<u>GRANTED</u>.  The action therefore shall proceed with regard only to Plaintiffs' claim for

conversion against Defendant Myers and Plaintiffs' claims against Defendant Brown.

IT IS SO ORDERED.

Date: _____03/26/2010_____

Copies to:

David J. Bodle
HACKMAN HULETT & CRACRAFT LLP
dbodle@hhclaw.com

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Sean Thomas Devenney
DREWRY SIMMONS VORNEHM, LLP
sdevenney@drewrysimmons.com

Jayme E. Donnelson
DREWRY SIMMONS VORNEHM, LLP
jdonnelson@drewrysimmons.com

John B. Drummy
KIGHTLINGER & GRAY
jdrummy@k-glaw.com

Peter S. French
LEWIS & KAPPES
pfrench@lewis-kappes.com

Abram B. Gregory
TAFT STETTINIUS & HOLLISTER LLP
agregory@taftlaw.com

John Russell Hargrove
HARGROVE PIERSON & BROWN, P.A.
jrh@hargrovelawgroup.com

Edward Wesley Harris III
TAFT STETTINIUS & HOLLISTER LLP
eharris@taftlaw.com

David Scott Klinestiver
LEWIS & KAPPES
dklinestiver@lewis-kappes.com

Michael T. McNally
ICE MILLER LLP
mcnally@icemiller.com

Anthony Seaton Ridolfo Jr.
HACKMAN HULETT & CRACRAFT LLP
aridolfo@hhclaw.com

Rabeh M. A. Soofi
ICE MILLER LLP
rabeh.soofi@icemiller.com

Peter G. Tamulonis
KIGHTLINGER & GRAY
ptamulonis@k-glaw.com

FRANK BROWN
2645 Ravendale Ln.
Holiday, FL 34691